```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF GEORGIA
 2                          ATLANTA DIVISION

 3   INTELLECTUAL VENTURES II LLC        )
                                         )
 4                 Plaintiff,            )   CIVIL ACTION FILE
                                         )   NO. 1:13-CV-2454-WSD
 5   v.                                  )
                                         )   ATLANTA, GEORGIA
 6   SUNTRUST BANKS, INC.                )
                                         )
 7                 Defendant.            )
     _____)

 8

 9                     TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE WILLIAM S. DUFFEY, JR.,
10                   UNITED STATES DISTRICT JUDGE

11                   Wednesday, April 9, 2014

12

13   APPEARANCES OF COUNSEL:

14   For the Plaintiff:      FEINBERG DAY ALBERTI & THOMPSON LLP
                             (By:  M. Elizabeth Day)
15
                             KREVOLIN & HORST LLC
16                           (By:  Zahra S. Karinshak)

17   For the Defendant:      KIRKLAND & ELLIS
                             (By:  Kenneth R. Adamo)
18
                             KEKER & VAN NEST LLP
19                           (By:  Robert Addy Van Nest)

20

21

22        Proceedings recorded by mechanical stenography
            and computer-aided transcript produced by
23               NICHOLAS A. MARRONE, RMR, CRR
                   1714 U. S. Courthouse
24                 75 Spring Street, S.W.
                    Atlanta, GA  30303
25                    (404) 215-1486
```

```
 1                    Wednesday Morning Session

 2                        April 9, 2014

 3                         10:10 a.m.

 4                         -- -- --

 5                  P R O C E E D I N G S

 6                         -- -- --

 7          (In chambers by teleconference:)

 8          THE COURT:  Good morning.

 9          MR. ADAMO:  Good morning.

10          THE COURT:  Do I have --

11          MS. DAY:  Good morning.

12          THE COURT:  Do I have --

13          MR. VAN NEST:  Good morning.

14          THE COURT:  Is there anybody that hasn't said good

15   morning yet that would like to?

16          Do I have Ms. Day and Ms. Karinshak on for the

17   plaintiffs?

18          MS. DAY:  Yes, you do, Your Honor.

19          MS. KARINSHAK:  Yes, Your Honor.

20          THE COURT:  And Mr. Van Nest and Mr. Adamo for

21   the -- for SunTrust?

22          MR. VAN NEST:  Yes, Your Honor.

23          MR. ADAMO:  Yes, Your Honor.

24          THE COURT:  What I wanted to do today is give you

25   some background information and ask your input on a decision
```

1    regarding the processing of the case.

2          The background is, you know, first my management

3    and style with respect to cases assigned to me, I will give

4    you some perspective, and then I will give you some practical

5    perspective on timing.

6          In a couple of months I will have been doing this

7    for a decade, and in that time -- and there is not unanimity

8    on our court as far as this approach in patent cases,

9    although there is lots of discussion amongst my colleagues

10    about patent cases and we were involved in discussions about

11    the pilot project.

12          And one of the things we always talk about is how

13    often district courts get reversed by the federal circuit

14    when they interpret patents.  And I think that's a reflection

15    on all of us having different backgrounds.  Mine happens to

16    be in English, no technical background.

17          But nonetheless my view has always been that when I

18    was appointed to this position, that one of the kinds of

19    cases that would be assigned to me were patent cases, and

20    there are lots of policy arguments about whether that's a

21    good system or not.

22          I have always taken it as part of my responsibility

23    to do those cases myself, and I have.  We have issued a

24    number of orders after *Markman* hearings, and I have been to

25    the federal circuit a couple of times in areas of technology

1      and the like that are totally unfamiliar with me.

2              But I guess I have always said that if I spend

3      enough time on something, I can learn whatever needs to be

4      learned, but I reserve the right to forget everything I have

5      learned when I'm done with it, which I have done.

6              So that's my approach to patent cases.

7              This case presents a different challenge.  I don't

8      think I have ever had a case that has five patents and as

9      many terms.  I think in this case there are 24 terms to be

10     interpreted.  And it's in an area in which, probably of all

11     the cases I have had, with the exception of a pharmaceutical

12     generic drug case, I find probably would be the most

13     challenging.

14             So that's kind of my personal approach to these

15     cases.

16             Let me tell you kind of what my practical

17     circumstances are right now.

18             As most of you probably know, we have had two

19     staffing issues on our court.

20             One is we are headed into the fourth year of being

21     short three active judges.  While there are nominees that

22     have been agreed upon by the White House and our senators,

23     it's hard to -- based upon some of the political maneuvering

24     lately, we have a low degree of confidence that we will have

25     any new judges on the court soon.

1          What's interesting is, because we have four

2     divisions, that when there is a shortage on the court -- in

3     this case, the shortage is on judges, active judges that are

4     missing assigned to the Atlanta Division -- that those case

5     loads effectively fall on five of us, even though there are

6     eleven active judges in the district.  So the increase in

7     workload has fallen on those that are assigned to the Atlanta

8     Division.

9          The other intervening event is that we have in the

10    past been helped by a number of senior judges, but as a

11    result of two deaths and the imminent retirement of two of

12    the senior judges from the Court, those additional case loads

13    have been assigned to the same judges in the Atlanta

14    Division.

15         And then on top of that, that the one place

16    apparently that the government has found to provide

17    additional funding is in the Justice Department, and while I

18    have got lots of kind of views about the kinds of cases that

19    are being indicted, the fact is there are more cases being

20    indicted.

21         And I think I currently have probably twelve -- ten

22    to twelve cases that have to be put on criminal trial

23    calendars.  Of those, we will probably try five or six, just

24    because there appear to be, based upon my personal docket

25    experience, more cases going to trial.  And there are lots of

1    reasons for that, but as a practical matter I think that's a

2    fair assessment.

3            Of course, those get priority.  I currently already

4    have three criminal cases that I have to try in the next

5    couple of months.

6            So here is just looking -- and we have been looking

7    at my docket through the end of the summer, and knowing that

8    and trying to read and predict how many of the criminal cases

9    I will have to attend to, as well as I know this is important

10   to you, but there are actually other litigants that think

11   their cases are more important, and in some of those

12   instances I agree with them because of the nature of the

13   dispute and the issues, the legal issues that need to be

14   decided.

15           And I think I can comfortably predict to you, now

16   that the *Markman* briefs have been filed, that I could not

17   hold a *Markman* hearing until September or October.  And

18   that's not the -- that's not a reflection that I have taken a

19   lot of summer vacation.  It is just the reality.  In fact, I

20   have canceled a lot of my personal time off in order to try

21   to deal with this docket.

22           But I am trying to predict to you kind of

23   realistically what the timetable is.  I would like to and

24   maybe I could bump it up sooner, but I think that's probably,

25   considering the difficulty of the issues in order for me to

prepare for a *Markman* hearing -- and ordinarily what I do as
I go through and try to digest the issues as much as I can
and then would send you some communication telling you where
I wanted the focus to be at the *Markman* hearing.  I think
that ultimately helps everybody.  It certainly has helped the
quality of the -- and the efficiency of a hearing.

       I can't imagine that I would not do that in this
case, but that also means that I tend to invest a lot of
up-front time before we get to that.

       There are others that would just have the hearing
and then sometime down the road would then go and try to
understand all the information that was presented.  That's
just not the way I manage my work.

       I will say what I have never done but what I would
be willing to do in this case, although I do it reluctantly
because it's not my work style, would be there are a number
of my colleagues for various and sundry reasons that talk to
parties about appointing special masters.

       Like I say, I have not done that, but I wanted to
tell you that because of my docket and my workload and what I
can't do, which I think I have a good reputation for, which
is to pretty promptly deal with things that are submitted to
me and need to be decided, as a practical matter it is almost
impossible in the current circumstances for me to be able to
do that.

1           So I would be open if you wanted to talk about for

2    at least this stage asking a special master to consider the

3    briefs and hold a *Markman* hearing, and then I would

4    reevaluate after that where we are from a workload standpoint

5    and maybe then discontinue the special master services and

6    jump back into the case to the extent there are other things

7    that need to be litigated.

8           And so the purpose of the call is simply to lay all

9    that out for you and get your reaction.

10          MR. VAN NEST:  Your Honor, this is Bob Van Nest for

11   SunTrust.

12          First of all, I want to thank you for being so

13   candid.  I know it's small consolation, but you are not

14   alone.  I know that judges in many districts are facing the

15   same situation.

16          Speaking for SunTrust, we want to do whatever the

17   Court would prefer to do.  Frankly, we would prefer to stay

18   with Your Honor, recognizing that that pushes the schedule

19   out.

20          If that just is not an acceptable result for

21   Your Honor and you really want the help, we would advocate --

22   we would certainly be open to exploring a special master and

23   trying to either agree on someone or accept what Your Honor

24   proposes.

25          But I think our first preference, even though

1  it would result in some delay, would be to stay with the

2  Court.

3          MS. DAY:  And, Your Honor, this is Elizabeth Day on

4  behalf of Intellectual Ventures.

5          We agree with Mr. Van Nest that we would prefer to

6  stay with the Court as well and schedule the *Markman* hearing

7  subject to Your Honor's availability, appreciating how busy

8  you will be over the next several months.

9          But if it's looking like September or October for a

10 *Markman* hearing, that would be acceptable to Intellectual

11 Ventures.

12         THE COURT:  You know, you really have too much

13 false confidence in my ability to handle this.

14         MS. KARINSHAK:  Your Honor, I know you are very

15 smart and you can study up on all of this stuff.  It's

16 fascinating.

17         THE COURT:  Is that Zahra?

18         MS. KARINSHAK:  Yes, Your Honor, that's

19 Zahra Karinshak.

20         THE COURT:  You are just trying to curry favor, so

21 I'm going to discredit that comment.

22         MR. ADAMO:  Your Honor, it's Ken Adamo.

23         I don't curry favor very well.  Any English major

24 who is brave enough to jump in on the subject matter of these

25 five patents, we are confident you are going to get gunned on

1    up, and you may end up finding out it could be a little bit

2    of fun.

3           I crossed my fingers when I said that.

4           THE COURT:  You know, when people say what was my

5    interest in English when I was an undergraduate student,

6    I said it was in Victorian literature, and one of my favorite

7    poems was Alfred Lord Tennyson's "The Charge of the Light

8    Brigade."  And I'm beginning to feel a little bit like that,

9    cannons to --

10           MR. ADAMO:  Your Honor, I don't think I have ever

11    heard any of your colleagues refer to a patent case as the

12    Valley of Death, but there is always a first time.

13           THE COURT:  I was thinking more cannons to the

14    right of them, cannons to the left of them, that part of the

15    poem.

16           MR. ADAMO:  Yes, yes.

17           MR. VAN NEST:  Judge Duffey, this is Van Nest

18    again.

19           Would it make sense -- I heard what you said

20    about number of patents, number of claims, challenging

21    technology.  I know the parties would be willing to

22    provide some kind of a tutorial, if you think that would be

23    helpful.

24           As you -- when you get to the point where you are

25    going to start your up-front work, the work you do before the

1    hearing, if you wanted us to submit -- to appear and give a

2    tutorial -- or sometimes we submit these on DVDs.  I think my

3    preference is always to be there.

4            But if Your Honor would find that useful, I know,

5    speaking for SunTrust, we would be happy to do it.

6            We also are frustrated by the number of patents and

7    the number of terms.  We have got 54 claims pending.  At some

8    point that's just too much for -- certainly too much for a

9    jury, and right now it's a huge burden on everybody,

10   including you the Court.

11           And, you know, we have been advocating cutting that

12   down to something that's actually of sufficient size for

13   everybody to litigate in a reasonable time, and it hasn't

14   happened.

15           But I think between the combination of cutting this

16   thing down to something more realistic and providing

17   Your Honor with a tutorial, maybe we can help a little bit

18   with the workload that you are suffering under, and you could

19   tell us when in your process that made sense to do, if it

20   made sense at all.

21           THE COURT:  Well, I love the idea --

22           MR. ADAMO:  Your Honor, a little more -- I'm

23   sorry.

24           THE COURT:  No, go ahead.

25           MR. ADAMO:  A little more background on what

1    Mr. Van Nest just said.  This is Ken Adamo again.

2         There has already been in the Southern District of

3    New York case that's pending in front of Judge Hellerstein,

4    there has already been a *Markman* hearing and a *Markman* order

5    entered with respect to the same patents that are in suit

6    before Your Honor.

7         And in that process, Judge Hellerstein, frankly,

8    threw the Southern District of New York patent rules out the

9    first day he called us down to the courthouse to visit with

10   him.  So we have done both a tutorial and had a *Markman*

11   hearing, so both sides, frankly, are already locked and

12   loaded to do the tutorial.

13        We did not put it on a DVD, but that's very easy to

14   do.  I concur with Mr. Van Nest, I think possibly doing both

15   and with the possibility of doing the DVD first so Your Honor

16   and your staff could review it in chambers and then call us

17   in for a live session where parts that you heard you might

18   want a little additional information on, you can give us that

19   heads-up and we can come in and do that.

20        That would be I think a very -- my suggestion -- or

21   SunTrust's suggestion would be it would be a very efficient

22   way to use the Court's time.

23        And both of us, IV and SunTrust, we appreciate the

24   educational issues here, particularly when you have got to

25   deal with the Speedy Trial Act.  This might be a maximal way

1   to get you up to speed quickly, and of course you can time

2   shift when you have the DVD, et cetera.

3        So that's just a little additional information,

4   Your Honor.

5        THE COURT:  Can you tell me a little more about the

6   litigation before Judge Hellerstein and to what extent in

7   their *Markman* hearing was there any mirroring of the terms

8   that are before me?

9        MR. ADAMO:  There is a *Markman* order that has been

10  entered.  I don't have a copy of it right easy to grab.  We

11  certainly could get a copy of it to the Court, if you would

12  like to -- if you would like to see it.

13        I have -- frankly, the patents are all the same.

14  I have not checked the briefing to see if there is mirroring,

15  I haven't checked it against the order, but I got the last

16  round of briefing sitting right in front of me.

17        Certainly with respect to the '666 patent, the

18  terms were all previously addressed by Judge Hellerstein.

19        Looking very quickly at the rest of these, I can

20  recognize that some of the terms were.  I can't tell you for

21  sure that they all were, but, Your Honor, it would take us

22  fifteen minutes to check it and get the information back to

23  the Court, at most.

24        Now, there is certainly a view, and I will tell you

25  because I am also involved in that case, that, frankly,

1   I would like to take another shot with you on some of the

2   terms that he construed, and I dare say that Ms. Day's

3   partners who were at the hearing -- Ms. Day was not -- might

4   want to take another shot at you with some of the terms that

5   Judge Hellerstein has already construed.

6          But it's -- I would expect the mirroring is

7   probably substantial.  I can't tell you without checking that

8   it's 100 percent, but at a fast look it is probably over

9   80 percent.

10          THE COURT:  Yeah, a lot of overlap, then.

11          MR. ADAMO:  Yes, sir.

12          THE COURT:  I guess two things would be helpful, is

13   to get a copy of that order just for some background reading,

14   and then maybe a chart of the terms construed there as

15   compared to the terms that are presented to me, just so I can

16   see what kind of overlap there is.

17          MR. ADAMO:  It would be very easy to do both,

18   Your Honor.  I can get the Southern District of New York

19   order on its way to you.  I even think I have a hard copy

20   laying in this mess here somewhere.

21          THE COURT:  Okay.

22          MR. ADAMO:  Just so Your Honor knows, there is

23   transcript in front of Judge Hellerstein of the tutorial,

24   there is transcript of the *Markman* hearing.

25          The order itself, because of the way

```
 1    Judge Hellerstein did it, you don't see the parties' --
 2    all you see is the Court's final ruling, and all it says is
 3    here is the term, here is my ruling.  You don't see what the
 4    back and forth might have been.
 5              Although in the briefing -- in the Markman
 6    briefing before Your Honor, particularly in the second round,
 7    Judge Hellerstein's order has been briefed in the second
 8    round of the Markman briefing that you have before you in
 9    this case.
10              THE COURT:  Okay.  And who is the plaintiff in the
11    New York case?
12              MR. ADAMO:  Also IV, Your Honor.  The defendants in
13    the New York case are -- it's various J.P. Morgan Chase
14    entities.
15              And the civil number -- it's Intellectual Ventures
16    II LLC v. J.P. Morgan Chase, et al., and it's Civil
17    1:13-CV-03777-SD, New York.  It was filed June 4th of last
18    year, 2013.
19              All told, Your Honor, there are actually -- one,
20    two, three, four, five, six -- there are seven or eight cases
21    that involve one or more of the five patents that you have
22    before you that are currently pending between IV and a number
23    of different banks that I'm involved in.  Mr. Van Nest is not
24    involved in all of the same cases that I am, but there are
25    seven or eight, depending upon how you count them, where
```

1  these same patents -- one or more of these same patents are

2  involved.

3          Seven of the cases, actually all five of them are

4  also involved.

5          THE COURT:  All right.

6          MR. ADAMO:  I'm sorry if this is information

7  overload, but I thought you might want to know this.

8          THE COURT:  You know, I guess if we are going to

9  have information overload, we may as well get started now.

10          MR. ADAMO:  I don't want to get -- Your Honor, with

11  all respect, I don't want to get the reputation of being the

12  overloader to this Court.

13          THE COURT:  Well, that's okay.

14          I like the abbreviation we are using for the

15  plaintiff, because I might need one.

16          Let me talk about tutorials.  I really like

17  tutorials, but I have had two experiences with them.

18          One was a tutorial that was completely unhelpful to

19  me because it was the opportunity for the -- even though I

20  had told them the issues that I wanted addressed, told them

21  I wanted background information, I wanted a demonstration on

22  how the technology worked, and instead I got experts

23  explaining to me why the other expert was wrong about their

24  interpretation of the invention.

25          Now, that's compared to a tutorial in this generic

drug case where I told them, I said that my worst grade in

high school was in Chemistry, and I said but it would really

help me if you bring those little models where you have

straws and little styrofoam balls, because the issue was the

configuration of the molecule.

And they did that.  We started from just very

basic chemistry, and by the time that was over -- and I am a

real visual learner -- that I really understood what the

technical issue was.  And that was just getting me up on the

science.

So if there was a tutorial, it would have to be

instructional and not advocacy.

MR. ADAMO:  Your Honor, it's the Overloader

again.

I think, as I said, because the tutorial in

front of Judge Hellerstein is -- was of record, there is

a transcript available.  My recollection is it was an

afternoon session.  He restricted us to three hours, as

I recall it.

There was no battling experts.  No one had an

expert present or tried to have the experts.

The materials relating to the tutorial were served

simultaneously, which, of course, then stops the battling

experts.  If you tell people I don't want to see experts and

they are served simultaneously, it's hard to battle when you

 1    can't see what the other person has said.

 2              THE COURT:  Yeah.

 3              MR. ADAMO:  But that would give you a flavor of how

 4    the tutorial was done in front of Judge Hellerstein.

 5              But the problem, frankly, is four of these five

 6    patents are -- and Ms. Day will correct me, I'm trying to be

 7    very accurate about how I describe this -- I think in

 8    fairness would be described as software-type conventions or

 9    as claimed.

10              One of the five patents relates to, by its claims,

11    an actual thing.  It's a crypto card for encrypting and

12    decrypting information.  And about the only thing, other than

13    showing the Court the card, which can be done, and the

14    microprocessor package that the crypto engine that's accused

15    of infringement is sitting in, the visuals mainly would be

16    the figures from the patents.  That's about the best one can

17    do as far as visuals.

18              But they help.  There is no two ways about it, they

19    absolutely help.

20              MR. VAN NEST:  Your Honor, this is Van Nest.

21              As someone that wasn't involved in the New York

22    case, I know that we would like to do our own tutorial for

23    Your Honor.  And we understand the guidelines, and you just

24    let us know what form that should take and when you want

25    them, and we will do it.

```
 1              THE COURT:  Okay.

 2              MR. VAN NEST:  I have no problem with your reading

 3    the one that was done there.   I just wouldn't want to rely

 4    on it in our case here since we weren't involved.

 5              MR. ADAMO:  Yes, Your Honor, and I -- just to

 6    make sure, I agree completely with Mr. Van Nest, I was not

 7    suggesting that SunTrust has or should appropriately go

 8    with what JPMC has already done in front of

 9    Judge Hellerstein.

10              THE COURT:  And I'm not inclined to do that.  The

11    idea of reading through the transcript of somebody else's

12    presentation or a presentation of somebody else, I don't

13    think that would help me very much.  I think I'm better off

14    starting from scratch.

15              MR. ADAMO:  Understood, Your Honor.

16              MR. VAN NEST:  Understood.

17              MR. ADAMO:  Again, I was just offering it up so you

18    could see how it was done before and then tell us that you

19    don't like that so that Mr. Van Nest and I can do a better

20    job -- or at least I could do a better job than maybe I did

21    before.

22              THE COURT:  Well, I'll tell you I don't like that,

23    so you can go ahead and do your new work.

24              MR. ADAMO:  Yes, sir.

25              THE COURT:  On the other cases that involved in
```

1    whole or in part these patents, how mature are those cases

2    and have any of them gone to the circuit?

3            MR. VAN NEST:  They have not gone to the circuit,

4    Your Honor.  None of them has gotten out of the district

5    court yet.

6            There may be a couple slightly ahead of this case.

7    The one in New York is one and there is one in the Eastern

8    District of Virginia.  But none of them have gone up.

9            THE COURT:  Okay.

10           MR. VAN NEST:  And none of them are in trial yet.

11           MR. ADAMO:  And there are other *Markmans* scheduled,

12   Your Honor.

13           The original amended proposed scheduling order

14   here, I believe your case was either the next closest

15   *Markman* or there is one other that's in the process of

16   being briefed.  But there has been only one *Markman* so

17   far.

18           And, again, I'm sorry I don't have all of that

19   immediately at hand, but it would be very easily done in a

20   very short period of time.  We have got all of this on master

21   reports that are provided to me every week as to the

22   scheduling.

23           THE COURT:  Okay.

24           MR. ADAMO:  I could tell you how many other

25   *Markmans* are scheduled and who is going in what order.

1    But the only one that has been decided so far is

2    Judge Hellerstein's.

3            And there isn't a bat's chance in hell that any of

4    these are going up to the circuit until something has been

5    tried to verdict.  The circuit will not take interlocutory

6    reviews on *Markman* full stop.

7            THE COURT:  Right.

8            So what is your schedule in Hellerstein's case for

9    the further processing of it, discovery, and when do you

10   expect to get a trial date?

11           MR. ADAMO:  Again, Your Honor, I will tell you as

12   much as I am able to.

13           This Friday, we are -- April 11th, we are required

14   to exchange -- IV has to provide to J.P. Morgan Chase

15   contentions.  There have been no contentions done so far

16   because, as I said, His Honor took off the Southern District

17   of New York rules, so we are just regenerous here.

18           And then the defense has to provide invalidity

19   contentions.

20           After that, the subject of limiting the number of

21   claims and the number of patents is alive in front of

22   Judge Hellerstein.  He has not set a date certain as

23   to whether -- I'm sorry, as to when he's going to start

24   cutting back both the claims in issue and the prior art that

25   can be relied upon, but he has said, I believe, that he's

1    going to do it.  It's just a matter of when.

2           After the April 11th interchange, the next time he

3    has us set to come and see him I believe is early June, and

4    we are supposed to try to work out document discovery between

5    April 11th and that June date.

6           But, frankly, how well that's going to work and

7    whether we need to see him again is all going to depend upon

8    the exchange this Friday.

9           Past that point there is nothing scheduled.  No

10   depositions are allowed at this point, no interrogatories are

11   allowed at this point, no RAs are allowed at this point.

12          And trial date, he was very succinct about that:

13   When we are ready I will tell you, and we are not even close

14   to being ready.  I think that's almost verbatim what he

15   said.

16          THE COURT:  Okay.  Well, that backdrop is helpful.

17          MR. ADAMO:  One other piece of information,

18   Your Honor, that I am sure is going to come up sooner rather

19   than later.

20          I'm sure the Court is aware that under the last

21   major tinkering that Congress did with the Patent Act, the

22   AIA, there is now proceedings known as IPRs available in the

23   patent office.

24          THE COURT:  Yes.

25          MR. ADAMO:  One of the four -- I'm sorry, the

 1    five patents before Your Honor, the '666, is about three or

 2    four weeks at most away from the IPR declaration in that

 3    patent.

 4            IPRs are also being filed -- one additional one has

 5    been filed just this past week.  I'm led to believe that

 6    three more, which will cover all five of the patents in suit,

 7    will be filed by month's end.

 8            And there may be another set of IPRs -- and this

 9    I'm much less sure about.  There may be another set of IPRs

10    on all five of the -- I'm sorry, four of the patents that may

11    also end up being filed.

12            I don't know anything about the timetable.  I am

13    not involved in any direct way or manner with the preparation

14    of those.

15            THE COURT:  At least in one other case I have had

16    where that's been involved, there is I guess -- of course, I

17    don't know what the IPRs say, but it is possible that that

18    could change somewhat the nature of the dispute and the

19    issues to be decided.  Is that true?

20            MR. ADAMO:  Yes, sir.  That's why they are being

21    filed.

22            THE COURT:  Is there a timetable for the patent

23    office to deal with those?

24            MR. ADAMO:  Yes, sir.  A very firm timetable.

25            THE COURT:  And how long --

```
1              MR. ADAMO:  There is a six-month -- I'm sorry.

2              THE COURT:  So from the time of filing, they have

3     to issue something in six months?

4              MR. ADAMO:  No.  From the time -- yes.  There is

5     two time periods.

6              From the time of filing until the decision on

7     whether to initiate the IPR, statutorily it's six months, and

8     it cannot be extended.

9              From the time of initiation of the trial, which is

10    the term they use, until the board has to hand down a

11    decision, it's set by statute at twelve months, but the

12    statute does provide for the possibility of a six-month

13    extension.

14             The board has, in sum or substance, said it's going

15    to be over their dead body that they are going to extend any

16    of these the additional six months.  So start to finish, it

17    should be eighteen months.

18             MR. VAN NEST:  Your Honor, this is Van Nest.

19             I just want to make clear, SunTrust is not filing

20    any of these IPRs.  I think Mr. Adamo has the schedule

21    right, but these are not IPRs filed by or on behalf of

22    SunTrust.

23             MR. ADAMO:  I'm sorry, Mr. Van Nest is absolutely

24    right, Your Honor.  Again I'm trying to keep this as concise

25    as I can.
```

```
 1              None of the parties in any of the suits, none of
 2    the defendants in any of the suits, have filed either of the
 3    two IPRs that have been filed so far.  They have been filed
 4    by a third party.
 5              THE COURT:  But they still could impact any of
 6    those cases.
 7              MR. VAN NEST:  They could.
 8              MR. ADAMO:  Yes, sir.
 9              MR. VAN NEST:  They could, that's right.
10              MR. ADAMO:  They could.  But it will be quite a
11    while, to be fair.
12              And Ms. Day knows the timetables as well as
13    I do.  It's going to be quite a while before anything
14    definitive results.  You are looking at -- the one patent
15    that's about to get declared, you are looking at another
16    year, to be fair.
17              THE COURT:  Okay.  I think the take-aways from this
18    conference is that I'm at least going to get -- and if you
19    have this for all of the cases, it would be helpful to me to
20    see in the cases that have been filed, in what case are the
21    same terms before me of the subject of that litigation in
22    addition to just the New York case.
23              So I can see -- I guess what I'm trying to say is
24    I would like to see how many different courts are going to be
25    construing the same terms that I do.  And that's more
```

 1    curiosity than anything else.

 2              Then maybe some information about where each of

 3    those cases is in the litigation process.

 4              And then maybe, finally, what filings there have

 5    been on the patent office, and is there any way of kind of

 6    giving me a thumbnail sketch of what impact those decisions

 7    might have on the various interpretations I have to make, or

 8    would they have any impact on the interpretation of *Markman*

 9    terms, or is it mainly on claims.

10              MR. VAN NEST:  We can do all that, Your Honor, and

11    we will.

12              THE COURT:  And you should do that with Ms. Day

13    so that whatever comes to me you both have looked at and

14    approved.

15              MR. VAN NEST:  When would you like it?

16              THE COURT:  Well, this is April 9th.  Could I get

17    that by the end of the month?

18              MR. VAN NEST:  Sure.

19              THE COURT:  And if --

20              MR. ADAMO:  Your Honor, it's Ken Adamo again.

21              On Judge Hellerstein's -- excuse me, Hellerstein's

22    *Markman* order, if I could get an e-mail address from your

23    courtroom deputy or from Your Honor, I can e-mail that to the

24    Court in the next fifteen minutes, if that's acceptable to

25    Ms. Day?

```
 1            MS. DAY:  That's fine with Intellectual Ventures,
 2   Your Honor, if you would like to see the order now, or we can
 3   submit it when the parties submit the other information
 4   Your Honor has requested.
 5            THE COURT:  I think if everything came at once,
 6   then I wouldn't have to keep a file and fill it up as things
 7   come in.
 8            MR. ADAMO:  Understood, Your Honor.  Thank you.
 9            THE COURT:  All right.  Just, Mr. Van Nest, is your
10   firm, Van Nest & Keker or Keker & Van Nest?
11            MR. VAN NEST:  It's Keker & Van Nest.
12            THE COURT:  Yes.
13            MR. VAN NEST:  K-e-k-e-r.  My partner is
14   John Keker.
15            THE COURT:  Okay.  I think I might have run across
16   him in the past, but I'm trying to remember when, and at my
17   season of life, I might not ever remember when.  So I'm not
18   going to fret about that.
19            MR. VAN NEST:  It would be a surprise.  I will give
20   him your regards regardless.
21            THE COURT:  He will say the same thing:  Who is
22   he?
23            MR. VAN NEST:  Yeah, he will remember vaguely too.
24            THE COURT:  And if he doesn't, he's going to claim
25   he did.
```

1           MR. VAN NEST:  That's right.

2           THE COURT:  All right.  This has been helpful to

3     me.  I appreciate everybody being available.

4           I will get something from everybody by the end of

5     the month, and I will do the best I can of trying to look at

6     the schedule and give you more certainty on processing

7     sometime over the summer.

8           MR. VAN NEST:  Thank you very much, Your Honor.

9           MS. DAY:  Thank you, Your Honor.

10          MS. KARINSHAK:  Thank you, Your Honor.

11          MR. ADAMO:  Thank you, Your Honor.

12          THE COURT:  Thank you very much.

13              (Proceedings adjourn at 10:48 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1                      C E R T I F I C A T E

2

3    UNITED STATES OF AMERICA        :
                                      :
4    NORTHERN DISTRICT OF GEORGIA     :

5

6              I, Nicholas A. Marrone, RMR, CRR, Official Court

7    Reporter of the United States District Court for the Northern

     District of Georgia, do hereby certify that the foregoing 29

8    pages constitute a true transcript of proceedings had before

9    the said Court, held in the city of Atlanta, Georgia, in the

10   matter therein stated.

11             In testimony whereof, I hereunto set my hand on

12   this, the 9th day of April, 2014.

13

14

15

16                          /s/ Nicholas A. Marrone

17                          _____
                            NICHOLAS A. MARRONE, RMR, CRR
18                          Registered Merit Reporter
                            Certified Realtime Reporter
19                          Official Court Reporter
                            Northern District of Georgia

20

21

22

23

24

25